MICHAEL A. BERTA (No. 194650)
ISAAC L. RAMSEY (No. 331142)
JESSICA GILLOTTE (No. 333517)
**ARNOLD & PORTER KAYE SCHOLER LLP**
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111
Telephone:    415.471.3100
Facsimile:    415.471.3400
michael.berta@arnoldporter.com
isaac.ramsey@arnoldporter.com
jessica.gillotte@arnoldporter.com

THOMAS T. CARMACK(No. 229324)
**ARNOLD & PORTER KAYE SCHOLER LLP**
3000 El Camino Real
5 Palo Alto Square, Suite 500
Palo Alto, CA 94306
Telephone:    650.319.4500
tom.carmack@arnoldporter.com

*Attorneys for Plaintiff*
*Crocs, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CROCS, INC., | Case No. _____ |
| Plaintiff, | **PLAINTIFF CROCS, INC.'S COMPLAINT FOR:** |
| v. | 1. **FEDERAL TRADEMARK INFRINGEMENT** |
| DAISO CALIFORNIA LLC, DAISO HOLDING USA, INC., and DAISO INDUSTRIES CO., LTD., | 2. **FEDERAL FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION** |
| Defendants. | 3. **FEDERAL TRADEMARK DILUTION** |
| | 4. **UNFAIR COMPETITION, CAL. BUS. & PROF. CODE §§ 17200, ET SEQ.** |
| | 5. **COMMON LAW TRADEMARK INFRINGEMENT** |
| | 6. **COMMON LAW UNFAIR COMPETITION** |
| | **DEMAND FOR JURY TRIAL** |

Plaintiff Crocs, Inc. ("Plaintiff" or "Crocs"), by and through its undersigned counsel, brings this action against Defendants Daiso California LLC ("Daiso California"), Daiso Holding USA, Inc. ("Daiso Holding USA"), and Daiso Industries Co., Ltd. ("Daiso Industries"), (collectively "Daiso," "Defendants", or the "Daiso Defendants"), and alleges as follows:

## NATURE OF THE ACTION

1.      Crocs is well-known for its iconic foam footwear.  First introduced to the world in 2002, the Crocs Classic Clog became an overnight sensation.  Twenty years later, the design of the Crocs Classic Clog has stood the test of time and earned the brand a reputation for its authenticity, unique style, and fun attitude.  Although Crocs now produces numerous varieties and styles of casual footwear, the flagship Classic Clog shoe accounts for more than half of all sales revenues, and is instantly recognizable to consumers across the globe.

2.      The popularity of the Crocs Classic Clog is confirmed by third-party recognition it has received on a widespread basis for two decades.  Most recently, the Classic Clog was named 2021's "Shoe of the Year" by Footwear News, and was identified by clothing and apparel online rankings as one of the most wanted fashion items in the world, including a #1 best-seller achievement on Amazon.com.

3.      Crocs has devoted tremendous time and resources to developing, promoting, and protecting its famous footwear designs.  In particular, the design of the Crocs Classic Clog has been widely disseminated in Crocs's print and online marketing materials, and is reflected in Crocs's federally-registered 3D design trademarks, which have accumulated significant goodwill.

4.      The success of Crocs has been followed by numerous imitators, such as Daiso, who produce and sell knock-off footwear bearing Crocs's design marks.  Rather than produce a casual foam clog shoe or sandal bearing an original design, resulting from independent product development, Daiso decided to reproduce Crocs's classic design in order to freeride and trade on the significant goodwill developed by Crocs through its innovative footwear.

5.      As alleged more fully below, Daiso has willfully engaged in trademark infringement and counterfeiting, trademark dilution, and unfair competition by producing a shoe bearing a design

that is virtually identical to the design of Crocs's three-dimensional design marks. This infringement and dilution scheme is intended to confuse, deceive, and mislead consumers into drawing associations between Crocs and Daiso and their respective footwear products so that Daiso can enjoy unfair gains and profits at the expense of Crocs.

6.      In this action, Crocs seeks to enjoin Daiso's unlawful conduct, and obtain all monetary relief due from the harm that Daiso has caused, and continues to cause, Crocs to suffer.

## PARTIES

7.      Plaintiff Crocs, Inc. is a Delaware corporation with its principal place of business at 13601 Via Varra in Broomfield, CO

8.      On information and belief, Defendant Daiso California is a California company with its principal place of business at 3502 Breakwater Court, Hayward, CA 94545.

9.      On information and belief, Defendant Daiso Holding USA is a Washington company with its principal place of business at 3502 Breakwater Court, Hayward, CA 94545.

10.     On information and belief, Defendant Daiso Industries is a Japanese kabushiki kaisha stock company with its principal place of business at 1-4-14, Saijoyoshiyukihigashi, Higashihiroshima, 739-0008 Japan.

## JURISDICTION

11.     This is an action under Section 32(1) of the Lanham Act (15 U.S.C. § 1114(1)); Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B); Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A); Section 43(c) of the Lanham Act (15 U.S.C. § 1125(c)); California Business and Professions Code § 17200; and California common law.

12.     This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338.

13.     This Court has pendent jurisdiction of the California statutory and common law claims pursuant to 28 U.S.C. § 1367 because the claims are so related to the other claims in the action over which the Court has original jurisdiction that they form part of the same case or controversy.

14.     This Court has personal jurisdiction over Defendant Daiso California because, on information and belief, Daiso California has deliberately engaged in significant and continuous business activities within this judicial district.  In particular, Defendant Daiso California sells the Accused Products to residents of this district through an online store at www.daisojapan.com, as well as at brick-and-mortar retail stores located throughout the district, and on information and belief, resides in this district at its principal place of business at 3502 Breakwater Court, Hayward, CA 94545.

15.     This Court has personal jurisdiction over Defendant Daiso Holding USA because, on information and belief, Daiso Holding USA has deliberately engaged in significant and continuous business activities within this judicial district, including its involvement in the sale of the Accused Products to residents of this district, and resides in this district at its principal place of business at 3502 Breakwater Court, Hayward, CA 94545.

16.     This Court has personal jurisdiction over Defendant Daiso Industries because, on information and belief, Daiso Industries has conducted business in the judicial district, and is involved in the sales of its Accused Products described below to residents of this district.  In particular, on information and belief, Daiso Industries is engaged with Defendants Daiso California and Daiso Holding in the manufacture, sale for importation, importation, distribution, and/or sale or procurement of its Accused Products.  Alternatively, the Court has personal jurisdiction over Daiso Industries pursuant to Fed. R. Civ. P. 4(k)(2).

## **VENUE**

17.     Venue is proper within this judicial district under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims set forth herein occurred in this district through at least Defendants' unauthorized use in commerce of the trademarks that Crocs is asserting in this action and which are described further below.  Venue is additionally proper within this judicial district under 28 U.S.C. § 1391(b) because Defendants Daiso California and Daiso Holding USA are residents of this district.

**DIVISIONAL ASSIGNMENT**

18.     Pursuant to Local Civil Rules 3-2(c) and 3-5(b), assignment of the case to the San Francisco Division or the Oakland Division is proper because a substantial part of the events or omissions giving rise to the claim have occurred within Alameda County, CA.

**FACTUAL ALLEGATIONS**

**I.     THE CROCS 3D MARKS**

19.     Crocs owns valuable trademarks.  The distinctive look of the Crocs Classic Clog is the embodiment of Crocs's iconic design marks, which are federally registered as U.S. Trademark Registration No. 5,149,328 (the "'328 Registration") (Exhibit 1) and U.S. Trademark Registration No. 5,273,875 (the "'875 Registration") (Exhibit 2), and they also include a common law trademark on the vamp of the shoe (the "Vamp Mark") (the '328 Registration, the '875 Registration, and the Vamp Mark, collectively, the "3D Marks" or "Crocs 3D Marks").[1]  The 3D Marks were first used in commerce no later than by June 2003, and Crocs has consistently and continuously used its valuable 3D Marks in commerce since that time.

20.     The Crocs 3D Marks consist of a three-dimensional configuration of the outside of an upper for a shoe, featuring holes placed across the horizontal portion of the upper.  The 3D Marks have a textured strip along the vertical portion of the upper having openings.  In addition, the design of the '875 Registration also depicts a textured strip on the heel of the shoe and a decorative band along the length of the heel strap.  The 3D Marks were first used in commerce no later than June 2003.  Images of these marks are reproduced below.  The Vamp Mark comprises  the horizontal portion of the upper, as shown in both figures.

---

[1] Crocs refers to the '328 Registration and '875 Registration as the "Registered Trademarks" to distinguish them from the Vamp Mark where appropriate.

**FIGURE 1: Representative Images of Crocs 3D Marks**

| Registration No. 5,149,328 | Registration No. 5,273,875 |
| --- | --- |

 

21.     None of the Crocs 3D Marks were subject to a prior registration or unsuccessful registration.

**A.      The Crocs 3D Marks Are Famous**

22.     As set forth below, the Crocs 3D Marks are widely recognized by the general consuming public of the United States as a designation of origin of the footwear products that are manufactured, sold, distributed, and promoted by Crocs.  In particular, the 3D Marks are widely publicized both by Crocs and third parties; products bearing the Crocs 3D Marks are sold extensively throughout the United States; the Crocs 3D Marks are recognized by consumers across different forms of media and in commercial settings; and the Registered Trademarks enjoy federal trademark registration.

**1.      Crocs Distributes Shoes Bearing the Crocs 3D Marks Through Many Different Channels and Market Segments**

23.     Crocs distributes its iconic footwear through a vast network of domestic distribution channels, including major retailers and department stores such as Nordstrom, Foot Locker, Urban Outfitters, Macy's, Journeys, Shoe Carnival, Designer Shoe Warehouse, Kohl's, Finish Line, and Famous Footwear; sporting good and outdoor retailers such as REI, Dick's Sporting Goods, and Academy Sports; and online retail outlets like Zappos.com and Shoes.com.  Crocs also distributes its footwear through various and sundry specialty channels, including gift shops, collegiate bookstores, uniform suppliers, independent bicycle dealers, specialty food retailers, and health and

beauty stores.  In addition, Crocs sells its footwear through its website, www.crocs.com, and in Crocs's own retail stores all over the world.  Crocs footwear is available for sale in over 90 countries.

24.     Soon after Crocs introduced its iconic Classic Clog in late 2002, it became apparent that the shoe appealed to diverse groups of consumers seeking fun and friendly, comfortable footwear with a distinctive appearance.  By 2005, Crocs's footwear bearing the design of the 3D Marks had become recognized as a new standard-bearer in the fashion footwear, professional footwear, and casual footwear markets.

25.     Figure 2, below, highlights how the Classic Clog incorporates the 3D Marks:

**FIGURE 2: Representative Images of Crocs 3D Marks with the Classic Clog**

| Registration No. 5,149,328 | Registration No. 5,273,875 | The Classic Clog |
| --- | --- | --- |



26.     For two decades, Crocs has produced footwear bearing the Crocs 3D Marks, including a lined version of its Classic Clog.  Crocs's footwear products bearing its famous and valuable 3D Marks are marketed for men, women, and children of all ages.  Crocs's customers come from all backgrounds, occupations, education and income levels, and geographic regions across the United States.

27.     Through unconventional collaborations with different brands, celebrities, and artists, the Classic Clog continues to reach diverse and specific psychographic market segments as the shoe is regularly repackaged into new footwear models bearing the Crocs 3D Marks. The list of these partnerships includes modern pop artists like Justin Bieber and Post Malone, Los Angeles high-fashion apparel brands Pleasures and Chinatown Market, the luxury department store Barneys New York, and fast-food chain KFC.

28.     The "rise of comfy clothing" resulting from the COVID-19 pandemic has only increased the popularity of Crocs's Classic Clog footwear bearing the Crocs 3D Marks.  While Crocs footwear is frequently worn by working professionals in the restaurant and hospitality fields, the increase in stay-at-home workers has resulted in the brand reaching additional occupational segments, as many consumers have sought out comfortable, casual footwear for use during the remote workday.

29.     Crocs has generated substantial revenue from the sales of its footwear products bearing the Crocs 3D Marks.  Each year Crocs sells millions of pairs of shoes bearing the Crocs 3D Marks in the United States alone, corresponding to hundreds of millions of dollars in revenue.  Indeed, the Crocs Classic Clog is the Crocs brand's flagship shoe and Crocs's classic footwear bearing the Crocs 3D Marks accounts for more than half of all sales revenues.  The Crocs Classic Clog is routinely listed as a most-wanted item or best-seller in footwear, including on Amazon.com where it is frequently ranked #1 in Best Sellers in Clothing, Shoes & Jewelry, based on the eCommerce platforms' hourly sales data updates.

**2.      The Crocs 3D Marks Receive Substantial Publicity and the Marks Are Widely Recognized by the Consuming Public**

30.     Since their debut, the Crocs Classic Clog shoes bearing the Crocs 3D Marks have received substantial publicity.  By 2006, the Classic Clog had already morphed into "a global phenomenon" and became a popular source of public discussion thanks to the look of its distinctive design elements.  The same year, the brand's success was recognized with a marketing award for garnering more than 800 million editorial impressions.

31.     The design of the iconic Crocs footwear, depicted in the Crocs 3D Marks, is itself responsible for generating much of the publicity that Crocs receives.  Its unusual and distinctive appearance has made the classic Crocs shoe a source of extensive discussion.  Significant attention to the look of Crocs's footwear has resulted in consumers of Crocs footwear, as well as non-consumers, coming to recognize the design of the Crocs 3D Marks depicted in the Classic Clog as synonymous with the brand Crocs.

32.     Public figures spotted wearing the Crocs Classic Clogs have helped keep the media

spotlight trained on shoes bearing the Crocs 3D Marks. President George W. Bush, for example, made international news when he was seen wearing a pair of Classic Clogs. The Classic Clogs have also been seen in public on the feet of television and movie stars like Jack Nicholson, Whoopi Goldberg, John Cena, Priyanka Chopra Jonas, Shia LaBeouf, Jennifer Garner, Zoey Deschanel, and Sacha Baron Cohen, and famous musicians like Ariana Grande, Post Malone, and Justin Bieber. A picture of the Oscars 2021's Musical Director, Questlove, wearing a golden pair of the Crocs Classic Clogs on the red carpet became a focus of post-show media coverages. News sources referred to the golden Crocs as the "life and sole of Oscars 2021 red carpet," or their "red carpet obsession." And, important to the substantial publicity that the Crocs 3D Marks have received, the headlining images selected to present this red carpet story to the public were often cropped and focused on the iconic footwear, showcasing each design element of the 3D Marks.

33. A representative image of online media coverage of Questlove's Golden Crocs at the 2021 Oscars is depicted below:





34. The Crocs 3D Marks receive substantial publicity on social media, too. For example, a viral video "Crocs Shaving Cream Challenge" has led to hundreds of thousands of online videos consisting of "filling a Crocs shoe with shaving cream and then jamming your foot in." Similarly, a viral six-second video of a grandmother wearing the classic Crocs shoe has received tens of millions of views. Moreover, an almost infinite number of memes featuring the Crocs Classic Clog

shoe have spread across different social media platforms.  These memes are frequently encountered on digital devices at close distances where elements of the Crocs 3D Mark design are apparent.

35.     The popularity of the Crocs Classic Clog continues to reach groundbreaking milestones.  In 2021, for example, Footwear News named the clog "Shoe of the Year" at its 35th annual Achievement Awards.  And, just in the year prior, the Classic Clog earned close to 25 billion observed media impressions.

### 3.     The Crocs 3D Marks Receive Substantial Publicity and the Marks Are Widely Recognized by the Consuming Public

36.     Two of the Crocs 3D Marks were federally registered on February 28, 2017, as U.S. Trademark Registration No. 5,149,328, and on August 29, 2017, as U.S. Trademark Registration No. 5,273,875.  The Vamp Mark is a common law trademark.

### B.     The Crocs 3D Marks Are Not Functional

37.     The Crocs 3D Marks feature ornamental design characteristics that are arbitrary and one-of-a-kind.  These characteristics give the overall impression of a fun and distinctive clog-like shoe for which Crocs is well-known.  The distinctively gentle slope of the upper also gives the shoe a unique, recognizable outline across the vamp of the shoe.  These design features are inherently distinctive, and there is no utilitarian function or benefit that could be attributed to them either individually or in combination.

38.     Given the virtually infinite number of different, non-infringing footwear styles in existence today, and which are available to other footwear companies, Crocs's competitors do not have any actual competitive need to use the Crocs 3D Marks in commerce.

39.     As explained in greater detail below, the Crocs 3D Marks are intentionally and frequently copied, not due to competitive need, but because of the significant goodwill that the Crocs 3D Marks have accumulated over the past two decades during their use by Crocs.

### C.     Crocs Does Not Generally License the Crocs 3D Marks

40.     Crocs has only licensed the Crocs 3D Marks on one occasion, and thus has an especially keen interest in protecting them from the kind of confusion and dilution that occurs from the unlicensed use of its marks by knockoffs.

41.     Specifically, in 2017, Crocs unveiled a licensing partnership with famed footwear designer Balenciaga. These shoes retailed for $850, and were described as one of the "hottest trends" of 2018 by Business Insider.

42.     The Balenciaga/Crocs cross-over shoe was a smashing success: the shoes sold out during pre-release before they were even officially available for purchase. They were offered on eCommerce sites including Barneys New York.

43.     The cross-over shoes incorporate the 3D Marks.  Notably, the shoes feature round holes placed across the horizontal portion of the upper, and a textured strip along the vertical portion of the upper having trapezoidal openings.  In addition to these features, the shoes also have a textured strip on the heel of the shoe, and a decorative band along the length of the heel strap, as contemplated by the '875 Registration.  A representative image of these shoes is shown below:



44.     A close-up of the shoe reveals Balenciaga's name on the button connecting the heel strap to the base of the shoe, which replaces the usual Crocs logo found in the same spot:



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

45.     Other configurations of the collaboration clog included Balenciaga's name as a shoe charm:



## II.    PLAINTIFF CROCS

### A.    The History of Crocs and its Classic Clog footwear

46.     Crocs was founded in 2002 by three college friends and innovators who shared a love for sailing.  That year, Crocs co-founder Scott Seamans saw a shoe developed and manufactured by Canadian company Foam Creations, Inc.  He came up with the idea to add a foam strap to the shoe, and the Classic Clog was born.  He and his friends George Boedecker and Lyndon "Duke" Hanson embarked on a Caribbean sailing trip on a quest to perfect the shoe and, by November 2002, Crocs had sold its first thousand pairs of shoes. After expanding domestic distribution and production capacity, Crocs acquired Foam Creations in June 2004. Around that time, Crocs also added warehouses and shipping programs for speedy assembly and delivery.

47.     Crocs launched its first national marketing campaign in 2005 after partnering with a local Colorado advertising firm.  The campaign played on the distinctive design elements of the clog-like shoe that is embodied in the Crocs 3D Marks, and across the country, it spread the brand's message that "Ugly Can Be Beautiful."

48.     Continuing in an upward trajectory, Crocs began to lay the foundation for an Initial Public Offering ("IPO").  The company turned a net profit of $16.7 million for 2005, and was named "Brand of the Year" by Footwear News.  Then, in 2006, Crocs launched the largest footwear IPO in history, raising approximately $208 million in its 9.9 million-share offering.

49.     The 2008 economic downturn impacted Crocs as hard as it did any other company. It was not until 2011 that Crocs saw its first rebound, when it opened hundreds of new stores and reported sales of $1 billion worldwide for the first time in its history.

50.     Building on this success, the company implemented a return to the basics that relied on the goodwill it had established around the Crocs 3D Marks over the past decade by reintroducing the Classic Clog with attention-grabbing celebrity partnerships and a fresh ad campaign that acknowledged the company's detractors.  The new "Come As You Are" campaign invited footwear shoppers to be themselves, and to recognize the false choice between comfort and style by embracing the brand's distinctive clog-like foam shoes.

51.     During the past few years, Crocs has seen continued and steady sales growth as a result of its revitalization.  In January 2020, People Magazine reported that sales for the Crocs Classic Clog had spiked 12 _million_ percent on Amazon.com where the classic shoe embodying the Crocs 3D Marks has become the eCommerce platform's best-selling footwear item.  The largest global fashion search platform, Lyst, reported that, based on web searches, the Classic Clog was the eighth most wanted item in the world.  The New York Times declared that "Crocs Won 2020," and fashion bloggers predicted that "2021 will be the Year of the Croc."

52.     The high volume of sales of footwear bearing the Crocs 3D Marks is responsible for the edification of Crocs as an institution in the footwear industry, and demonstrates the goodwill built into these marks that continue to carry the company to greater heights.

**B.      The Crocs Classic Clog Remains the Flagship Shoe Among Other Models Reflecting the Crocs 3D Marks**

53.     Today, Crocs footwear can be found in hundreds of forms and color patterns, ranging from khaki canvas loafers to tie-dyed sandals.  Among this wide variety of options, the Classic Clog that features the Crocs 3D Marks remains the company's flagship shoe.

54.     Crocs has produced multiple lines of footwear that embody the Crocs 3D Marks, beginning with the classic "Beach" model when the company first launched.  The "Beach" Crocs shoes were soon after followed by the "Cayman" line bearing the Crocs 3D Marks.  As the brand's forebearers, these shoes in particular have inspired countless imitations.

55.     The Crocs 3D Marks are also reflected in numerous Crocs styles and models, including at least the following current footwear, each of which may include multiple models: Classic Clog (including Bae, Platform and All-Terrain models), the Classic Lined Clog, Baya Clog, Freesail Clog, and Crocs Littles Clog.

**C.     Crocs Vigorously Defends its Intellectual Property, Including its 3D Marks**

56.     Crocs devotes significant time and resources to stopping infringement of its 3D Marks. Its enforcement actions are diverse and multifaceted, ranging from full litigation to educational outreach depending on what is warranted by the circumstances.

57.     The scale of this infringement requires constant attention. Each year, enforcement officials around the world, including authorities in the United States, seize hundreds of thousands of shoes that improperly bear the Crocs 3D Marks.  For many of these products, the United States is the intended final destination.  In more recent years, the rise in consumer online shopping has enabled the sale of infringing footwear on an unprecedented scale.  For example, in 2018, Crocs's defense efforts resulted in the termination of over 70,000 online auctions for infringing products, and the shutdown of over 1,500 websites, in the United States alone.

58.     Crocs works with various third-party agencies to monitor and eradicate the infringing use of the 3D Marks.  One such agency Crocs has used is MarkMonitor, which monitors websites around the world for, inter alia, unauthorized or improper use of Crocs's trademarks appearing in their webpage content or similar uses of the trademarks in web articles to drive traffic to paid links.

59.     Crocs has also engaged in litigation to protect against the infringing use of the 3D Marks, including an investigation under Section 337 of the Tariff Act pending at the United States International Trade Commission.

## III.    THE DAISO DEFENDANTS

### A.    Daiso Background

60.    On information and belief, Daiso is a Japan-based dollar store with more than 5,000 brick-and-mortar retail locations worldwide and a significant eCommerce business that targets US-based consumers.  According to a statement by Daiso's President published on one of the company's websites, Daiso has "established a store in the genre of 100 yen uniform instead of the product genre," taking this business model around the world.  The Daiso corporate motto is further described as "changing the lives of people around the world at one price."

61.    In addition to brick-and-mortar retail, Daiso sells its products, including the Accused Products described below, directly through its websites, including www.daisojapan.com, www.daisous.com, and www.daiso-sangyo.co.jp.

62.     On information and belief, each of the Daiso Defendants is involved in the manufacture, importation, use, offer for sale, distribution, and sale of counterfeit footwear products bearing the Crocs 3D Marks, including certain Accused Products described below.   This infringement scheme is willful, and organized to undercut market prices by capitalizing on, and ultimately harming, the goodwill and reputation that Crocs enjoys with consumers.

### B.    Daiso's Accused Products

63.    The Daiso Defendants use generic terms such as "Casual Sandals for Men" and "Lined Casual Clog" to market and sell the Daiso Accused Products.  Representative images of Daiso's "Casual Sandals for Men" are depicted below.





64.    Representative images of Daiso's "Lined Casual Clog" are depicted below.



65.    On information and belief, the Daiso Defendants have produced and sold additional shoe models bearing the Crocs 3D Marks under various names and style descriptions.

66.    The Daiso Accused Products are manufactured abroad and are imported into the United States. Specifically, and as shown in the picture below, the shoes have a label stating "Made in China" and/or are sold with an affixed hangtag also stating "Made in China."

1
2
3
4
5
6
7
8
9
10
11

  

12  **C.  Daiso's Unfair Acts, Infringement, and Dilution of the Crocs 3D Marks**

13  67.  For the reasons set forth below, Daiso's Accused Products infringe and are likely to

14  dilute the Crocs 3D Marks.

15  **1.  Crocs Owned Valid, Protectable and Famous Trademark Rights Before
16  Daiso Promoted and Sold the Daiso Accused Products**

17  68.  On information and belief, based on the extensive monitoring performed by Crocs

18  and on Crocs's behalf as described above, Daiso began promoting and selling the Accused Products

19  after the Registered Trademarks had been registered and had become well-recognized and famous,

20  and after the Vamp Mark had been first used in commerce.

21  69.  The '328 Registration and '875 Registration relevant to Daiso's violations are the

22  subject of duly issued United States Trademark Registrations.

23  **2.  Daiso's Accused Products Are Likely to Cause Confusion with the
24  Crocs 3D Marks, and Have Already Caused Actual Confusion**

25  70.  As shown herein, Daiso's Accused Products bear designs that are likely to cause

26  confusion with the Crocs 3D Marks.  In particular, the size, positioning, number, and shape of the

27  holes on the horizontal portion of the upper of the Accused Products are confusingly similar to the

28

design of the Crocs 3D Marks.  The Accused Products have a textured strip along the vertical portion of the upper with trapezoidal openings, which also contributes to the likelihood of consumer confusion.  Further, like the design shown in the '875 Registration, the Accused Products have a textured strip on the heel of the shoe, and a decorative band along the length of the heel strap. Because the Accused Products imitate and copy each of the design elements of the Crocs 3D Marks, the Accused Products bear a design that is virtually identical in appearance to the design of the Crocs 3D Marks, such that the designs are practically indistinguishable and likely to cause confusion for consumers.

71.     Representative images of the Daiso Accused Products and the Crocs 3D Marks are depicted below in Figure 3.

**FIGURE 3: Representative Images of Crocs 3D Marks with the Classic Clog**



| Daiso's "Casual Sandal" | Registration No. 5,149,328 | Registration No. 5,273,875 |





| Daiso's "Lined Casual Clog" | Registration No. 5,149,328 | Registration No. 5,273,875 |

72.     On information and belief, consumers have actually confused Daiso's Accused Products with Crocs's footwear products that bear the 3D Marks.  For example, the Twitter user @dono_bog tweeted on August 20, 2021 "Got crocs at Daiso and they suck":



Got crocs at Daiso and they suck

4:03 PM · Aug 20, 2021 · Twitter for iPhone

73.     On December 19, 2020, Twitter user @lillikoiz tweeted that they were "absolutely obsessed with the $3 crocs I got at daiso":



absolutely obsessed with the $3 crocs i got at daiso

10:07 PM · Dec 19, 2020 · Twitter for Android

74.     On November 9, 2020, Twitter user @picklesaladlove tweeted "they have $3 crocs at daiso go go go":



they have $3 crocs at daiso go go go

12:22 PM · Nov 9, 2020 · Twitter for iPhone

COMPLAINT

75.     On November 26, 2019, Twitter user @thighcrusher69 tweeted "I bought Crocs from daiso and I be lookin fresh in thigh highs and crocs":



**𝕸𝖔𝖒𝖒𝖞 Milkers 𝕸𝖎𝖑𝖐 mommy gf** ❄
@thighcrusher69                                                    ...

I bought Crocs from daiso and I be lookin fresh in thigh highs and crocs.

12:38 PM · Nov 26, 2019 · Twitter for Android

76.     On March 4, 2019, Twitter user @kupopoboy tweeted "Apparently daiso sells crocs???? I might just paint them":

L e ♂ n 👲
@kupoboy

Apparently daiso sells crocs???? I might just paint them

2:53 PM · Mar 14, 2019 · Twitter for iPhone

77.     These comments by social media users evidence the actual confusion that consumers had about Daiso's Accused Products even at the point of sale.

### 3.    Daiso Intended to Copy the Crocs 3D Marks and to Infringe and Dilute the Crocs 3D Marks

78.     Daiso's intent to create associations with Crocs and to freeride on Crocs's goodwill is evident from at least the close similarities between Daiso's Accused Products on the one hand, and the famous Crocs 3D Marks on the other hand.  On information and belief, the overwhelming similarities are due to Daiso's intentional copying, and Defendants' unauthorized use of the Crocs 3D Marks is intentional, deliberate, knowing, and willful.

### 4.    Daiso Promotes and Sells Accused Products in Competition with Crocs's Promotion and Sales of Products Bearing the Crocs 3D Marks

79.     On information and belief, Daiso has promoted and sold its Accused Products at its brick-and-mortar retail stores in California and across the United States and globe, and has sold

online through various eCommerce platforms, including its own websites www.daisojapan.com, www.daisous.com, and www.daiso-sangyo.co.jp.

80.     On information and belief, Daiso's Accused Products have been promoted and sold at prices ranging from approximately $3.00 to $3.50 per pair.

81.     On information and belief, Daiso promotes and sells its Accused Products as casual footwear for men and women of all ages.

82.     On information and belief, Daiso's Accused Products are manufactured using low-quality processes, ingredients, and molds, and having a shoddy composition and feel, the Accused Products fail to match the quality of Crocs footwear in a manner that is remarkable and obvious when the two are directly compared.

### 5.     Relevant Consumers Are Susceptible to Confusion and Dilutive Associations Caused by Daiso's Accused Products

83.     Consumers of shoes like those at issue here are not likely to exercise great care in resolving likely confusion in their initial product interest, at the point of purchase, or in post-sale exposure. Even more sophisticated consumers are likely to experience cognitive dissonance regarding the source, affiliation, sponsorship, or association of Daiso's Accused Products when confronted with the low prices.

84.     In the post-sale context, where actual or potential consumers of shoes may only see Daiso's Accused Products on someone's feet in passing, consumers are also likely to mistake the source, affiliation, or sponsorship of Daiso's Accused Products with Crocs and/or the Crocs 3D Marks Trademarks, or to associate the Accused Products with Crocs and/or the Crocs 3D Marks.

### 6.     Daiso's Accused Products Are Likely to Cause Confusion and Dilutive Associations with Crocs or the Crocs 3D Marks

85.     Due to the overwhelming similarities and virtually identical appearance between the Daiso Accused Products and the design of the Crocs 3D Marks, and for the reasons set forth above, there is (a) a strong likelihood of confusion between Daiso or its Accused Products, and Crocs or the Crocs 3D Marks, and/or (b) a strong likelihood of dilution between the same.

**FIRST CAUSE OF ACTION**

**Trademark Infringement and Counterfeiting, 15 U.S.C. § 1114**

**(Against All Defendants)**

86.     Crocs realleges Paragraphs 1 through 85 of this Complaint and incorporates them by reference as if fully set forth herein.

87.     The Crocs 3D Marks are inherently distinctive, strong, valid, and protectable trademarks owned exclusively by Crocs.  They are entitled to protection under the Lanham Act, and two of the design marks are registered on the principal register in the United States Patent and Trademark Office as Registered Trademarks Nos. 5,149,328 and 5,273,875.

88.     Daiso has knowingly used and continues to use in commerce the Crocs 3D Marks, including reproductions, copies, or colorable imitations thereof, in connection with the development, manufacture, distribution, offer for sale, advertisement, and sale of counterfeit versions of the Crocs Classic Clog that bear the Crocs 3D Marks.

89.     Daiso's virtually identical use of the Crocs 3D Marks is likely to confuse, mislead, or deceive consumers and members of the general public as to the source, sponsorship, or affiliation of Daiso and Crocs and/or Daiso's footwear products and Crocs's footwear products, and is likely to mislead consumers and members of the general public to believe erroneously that Crocs has licensed, authorized, approved, sponsored, or otherwise endorsed Daiso's footwear bearing the Crocs 3D Marks.

90.     Daiso's actions, as set forth above and herein, including, without limitation, Daiso's unauthorized use of the Crocs 3D Marks, constitute trademark infringement and counterfeiting in violation of 15 U.S.C. § 1114.

91.     Daiso's infringement and counterfeiting of Crocs's Registered Trademarks is willful, deliberate, and intentional, and at all times has been done in bad-faith with the intent to confuse and deceive consumers and carried out with full knowledge of Crocs's exclusive rights to its iconic design marks.

92.     As a direct and proximate result of Daiso's infringement and counterfeiting activities, including, without limitation, the continued sale of the Accused Products, Crocs has suffered, and will continue to suffer, irreparable harm and damage to its valuable marks, business, goodwill and reputation with not only its customers, who confuse the Accused Products with legitimate Crocs products, but also with the general public, who are confused as to the source of the Accused Products after they have been sold.

93.     Crocs lacks an adequate remedy at law for this immediate and ongoing harm and will continue to be irreparably harmed unless Daiso is stopped.

94.     Under 15 U.S.C. §§ 1114, 1116, 1117, and 1118, Crocs is entitled to permanent injunctive relief against Daiso, including an order for the cessation of all infringing activities and the destruction of all infringing goods or articles, and Crocs is also entitled to monetary relief, including, without limitation, recovery of Daiso's profits and actual damages, treble damages, statutory damages, or other enhanced profits and damages, reasonable attorneys' fees and costs, and prejudgment interest.

## SECOND CAUSE OF ACTION

**False Designation of Origin and Unfair Competition, 15 U.S.C. § 1125(a)**

**(Against All Defendants)**

95.     Crocs realleges Paragraphs 1 through 94 of this Complaint and incorporates them by reference as if fully set forth herein.

96.     The Crocs 3D Marks are entitled to protection under the Lanham Act, and two of the design marks are registered on the principal register in the United States Patent and Trademark Office as Registered Trademarks Nos. 5,149,328 and 5,273,875.

97.     For two decades, Crocs has extensively and continuously developed, promoted and used the Crocs 3D Marks in commerce in the United States and worldwide, and began doing so before Daiso began its unauthorized use.  As a result, the Crocs 3D Marks are famous and well-known indicators of the origin, source, and quality of Crocs footwear.

98.     Daiso's unauthorized use of the Crocs 3D Marks, as set forth above and alleged herein, constitutes a false designation of origin within the meaning of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), that is likely to cause confusion, mistake, or deception as to the affiliation, connection, source, origin, authorization, authorship, sponsorship, and/or approval of the Accused Products by creating the false and misleading impression that the Accused Products are manufactured by, authorized by, associated with, sponsored by, or affiliated in some manner with Crocs, when there is in fact no such connection between Crocs and Daiso.

99.     The consuming public is likely to attribute to Crocs Daiso's use of Crocs's 3D Marks as a source of origin, authorization, and/or sponsorship for the products Daiso sells and, is further likely to purchase products from Daiso in the erroneous belief that Daiso is authorized by, associated with, sponsored by, or affiliated in some manner with Crocs, when there is no such connection between Crocs and Daiso.

100.    Daiso's actions have been conducted without Crocs's consent, and they have been conducted intentionally and willfully, with the express intent to cause confusion and mistake, to deceive the consuming public, to freeride and trade upon the reputation of Crocs and quality of its footwear, and to appropriate Crocs's valuable trademark rights.

101.    As a direct and proximate result of Daiso's misconduct, Crocs has suffered, and will continue to suffer, irreparable harm to its valuable trademarks, business, goodwill and reputation with both its customers and the general public, who are confused as to the source of the Accused Products after they have been sold.

102.    Crocs has no adequate remedy at law for this immediate and continuing harm, and will continue to be irreparably harmed absent permanent injunctive relief.

103.    Crocs is entitled to permanent injunctive relief against Daiso under 15 U.S.C. § 1116(a), including an order for the cessation of all infringing activities and the destruction of all infringing goods or articles pursuant to 15 U.S.C. § 1118.

## **THIRD CAUSE OF ACTION**

### **Trademark Dilution, 15 U.S.C. § 1125(c)**

### **(Against All Defendants)**

104.    Crocs realleges Paragraphs 1 through 103 of this Complaint and incorporates them by reference as if fully set forth herein.

105.    Crocs's Registered Trademark Nos. 5,149,328 and 5,273,875 are highly distinctive, strong, valid and protectable trademarks that are "famous" as defined in 15 U.S.C. § 1125(c), including, without limitation, on account of the extensive duration and geographic reaching of advertising and publicity of the Crocs 3D Marks reflected in the Crocs Classic Clog footwear, the high volume of sales of the Crocs Classic Clog offered under the Crocs 3D Marks, and widespread actual recognition of the Crocs 3D Marks.  Daiso's use of these marks constitutes a use of these famous trademarks in commerce.

106.    Crocs used Registered Trademark Nos. 5,149,328 and 5,273,875 in commerce—and those Registered Trademarks became famous—before Daiso began its unauthorized uses of these Registered Trademarks.

107.    Crocs's use of the Registered Trademarks is substantially exclusive, and the Registered Trademarks are widely recognized by the general consuming public of the United States as designations of source of goods and services.  As set forth above and alleged herein, Crocs's Registered Trademarks are widely recognized in the United States and around the world, and consumers instantly recognize the connection between Crocs and these famous marks.

108.    Daiso's Accused Products are virtually identical in appearance to the design of the Crocs 3D Marks, and thus bear a high degree of similarity.

109.    Daiso's unauthorized uses of the Crocs 3D Marks and, specifically, without limitation, Daiso's sales and offers for sale of the Accused Products, constitute dilution by blurring and dilution by tarnishment of Crocs's famous marks and, on that basis, violate Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

110.   On information and belief, Daiso's dilution of the Crocs 3D Marks is willful, deliberate, and intentional, with full knowledge of Crocs's rights in its iconic design marks, and has been done with the intent to create an association with Crocs's those famous marks in order to willfully trade on the reputation, and/or harm the reputation, of Crocs's famous marks.

111.   Daiso's misconduct, including, without limitation, its unauthorized use of the Crocs 3D Marks in commerce, has had, and continues to have, the effect of creating an actual association in the minds of consumers between Daiso's Accused Products and Crocs's famous marks, and thus continues to dilute the distinctive quality and harm the reputation of Crocs's Registered Trademark Nos. 5,149,328 and 5,273,875 and tarnish the goodwill consumers associate with the Registered Trademarks.

112.   As a direct and proximate result of this misconduct, Crocs has suffered, and will continue to suffer, irreparable harm to its goodwill and reputation with both its customers and the general public who are confused as to the source of the Accused Products after they have been sold and who are likely to draw negative associations with Crocs's high-quality footwear based on their experiences with Daiso's low-quality footwear.  For these reasons and others, Daiso's dilutive commercial activities lessen the value of the Registered Trademarks as identifiers of Crocs's goods and services.

113.   Crocs has no adequate remedy at law for this immediate and continuing harm, and absent injunctive relief, will continue to suffer monetary loss and at least substantial and irreparable harm to the goodwill and reputation for quality associated with the Crocs 3D Marks.

114.   Crocs is entitled to permanent injunctive relief against Daiso under 15 U.S.C. § 1116(a), including an order for the cessation of all infringing activities and the destruction of all infringing goods or articles pursuant to 15 U.S.C. § 1118.  Crocs is further entitled to monetary relief and all remedies available under 15 U.S.C. § 1117(a), including, without limitation, Crocs's reasonable attorneys' fees and costs, and prejudgment interest.

## **FOURTH CAUSE OF ACTION**

### **Unfair Competition, Cal. Bus. & Prof. Code §§ 17200, Et. Seq.**

### **(Against All Defendants)**

115.     Crocs realleges Paragraphs 1 through 114 of this Complaint and incorporates them by reference as if fully set forth herein.

116.     The Crocs 3D Marks acquired substantial secondary meaning and had become famous or otherwise well-recognized in the marketplace before Daiso commenced its unauthorized uses of the Crocs 3D Marks in connection with the Accused Products.

117.     The Crocs 3D Marks are a single source identifier distinctly associated with Crocs.

118.     Daiso's unauthorized use of the Crocs 3D Marks is likely to cause, and has caused, confusion in the minds of consumers familiar with the Crocs 3D Marks.  In particular, Daiso uses the Crocs 3D Marks for casual footwear products, which is how Crocs uses the 3D Marks. Accordingly, consumers of Crocs's marks will be deceived or confused, or will otherwise be mistaken, as to the source of the business in question when they encounter Daiso's Accused Products.

119.     Daiso has traded off of Crocs's popularity and goodwill in producing, marketing, selling, and profiting from the sale of its Accused Products.  The Daiso Accused Products have caused, and are likely to cause in the future, impairment of the distinctiveness of the Crocs 3D Marks to associations by consumers with Daiso's similar marks.  Similarly, the reputation of Crocs's marks has been harmed, and is likely to be harmed in the future, through associations consumers draw with Daiso's similar marks, which occurs as a result of the promotion and sale of the Accused Products. This confusion and dilution diminish, or threaten to diminish further, the capacity of the Crocs 3D Marks to distinguish Crocs goods, constituting substantial present and likely future harm to Crocs, including economic harm in the form of lost profits and diminishment of brand equity.

120.     Daiso's use of the Crocs 3D Marks constitutes unfair competition by means of unfair, unlawful, and/or fraudulent business acts or practices within the meaning of California's Unfair Competition Laws, Cal. Bus. & Prof. Code §§ 17200, *et seq.*

121.    Daiso's misconduct is unlawful and fraudulent for numerous reasons, as set forth above and alleged herein, including, without limitation, because it constitutes infringement, misappropriation, and conversion of the Crocs 3D Marks to gain an unfair competitive advantage in the marketplace.  This violates California's public policy against unjust enrichment at the expense of another, and the injury is not outweighed by any countervailing consumer or competitive benefits of Daiso's acts or business practices.

122.    As a direct and proximate result of Daiso's misconduct, Crocs has suffered, and will continue to suffer, irreparable harm to its valuable marks, its goodwill, and its reputation with both its customers and the general public.

123.    Crocs has no adequate remedy at law for this immediate and continuing harm, and absent injunctive relief, will continue to be irreparably harmed by Daiso's unlawful, unfair, and/or fraudulent acts or business practices.

124.    Crocs is entitled to permanent injunctive relief under Cal. Bus. & Prof. Code § 17203 to prevent Daiso from continuing to engage in such unfair business practices as those set forth above and alleged herein.  Crocs is further entitled to restitution, including the disgorgement of money obtained by Daiso through its unfair business practices.

## FIFTH CAUSE OF ACTION

### Common Law Trademark Infringement

### (Against All Defendants)

125.    Crocs realleges Paragraphs 1 through 124 of this Complaint and incorporates them by reference as if fully set forth herein.

126.    Crocs owns common law trademark rights in the Crocs 3D Marks, including the Vamp Mark, throughout the United States and in the State of California, and all such rights owned by Crocs are superior to any rights that Daiso may claim to have in its use of the Crocs 3D Marks.

127.    Daiso's actions and misconduct, including, without limitation, its unauthorized use of the Crocs 3D Marks and its past and continued sales of the Accused Products, constitute trademark infringement in violation of California common law.  As set forth above and alleged

herein, the Daiso Defendants have manufactured, marketed, promoted, distributed, offer for sale, and sold products using the Crocs 3D Marks.  As a result, Daiso has created a substantial likelihood of confusion and caused actual confusion, mistake, and deception in consumers' minds.

128.     Daiso's unauthorized use of the Crocs 3D Marks, as set forth above and alleged herein, falsely represents and holds out Daiso's products as originating with, emanating form, or being authorized, sponsored, and/or approved by Crocs.

129.     As a direct and proximate result of Daiso's unauthorized use of the Crocs 3D Marks, Crocs has suffered and will continue to suffer irreparable harm to its valuable marks, goodwill, and reputation with its customers and the general public, and its ability to develop and promote its products and have its products associated exclusively with Crocs will continue to be undermined.

130.     Daiso has enjoyed unjust profits and gains in the marketplace while causing Crocs to suffer such substantial damages.  Accordingly, Crocs is entitled to recovery any and all profits that Daiso has made from its unauthorized use of the Crocs 3D Marks, including from its unauthorized sales of the Accused Products.

131.     Due to the immediate and ongoing nature of the harm, for which Crocs has no adequate remedy at law, Crocs is further entitled to injunctive relief to prevent continuing irreparable harm caused by the unauthorized actions of Daiso as set forth above and alleged herein.

## SIXTH CAUSE OF ACTION

### Common Law Unfair Competition

### (Against All Defendants)

132.     Crocs realleges Paragraphs 1 through 131 of this Complaint and incorporates them by reference as if fully set forth herein.

133.     Daiso's unauthorized use of the Crocs 3D Marks and past and continued sales of the Accused Products constitute unfair competition in violation of California common law.  As a result of these unauthorized activities, Daiso has willfully and fraudulently passed off the Accused Products as Crocs footwear products that bear the Crocs 3D Marks.

134.     Daiso's unauthorized use of the Crocs 3D Marks was intended to deceive consumers, and had the predictable effect of deceiving consumers, about the source of the Accused Products.

135.     As set forth above and alleged herein, the unauthorized use of the Crocs 3D Marks by Daiso has caused Crocs to suffer, and will continue to cause Crocs to suffer, irreparable harm to its valuable marks, goodwill, and reputation with both consumers and the general public.

136.     Crocs is entitled to permanent injunctive relief enjoining Daiso from using the Crocs 3D Marks in connection with the marketing or sale of any goods or services.  Crocs is further entitled to monetary relief and all remedies available under California common law, including restitution of the unjust profits earned by Daiso from its unauthorized use of the Crocs 3D Marks,  an award of compensatory damages for harm suffered by Crocs as a direct and proximate result of Daiso's misconduct, and punitive damages.  Daiso's misconduct is aggravated by willfulness, wantonness, malice and reckless disregard for the rights and welfare of Crocs, for which California allows the imposition of exemplary and punitive damages in an amount sufficient to punish and make an example of Daiso, and to deter it from similar misconduct in the future.

## PRAYER FOR JUDGMENT AND RELIEF

WHEREFORE, Crocs respectfully requests that the Court enter judgment against Daiso and in favor of Crocs, and further requests as follows:

A.     That the Court enter judgment that:

    a.   Daiso has violated Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1);

    b.   Daiso has engaged in false designation of origin and unfair competition in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A);

    c.   Daiso has engaged in trademark dilution in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c);

    d.   Daiso has engaged in unlawful, unfair, fraudulent, and/or deceptive acts or business practices in violation of California's Unfair Competition Laws, Cal. Bus. & Prof. Code §§ 17200, *et seq.*;

e.   Daiso has engaged in trademark infringement in violation of the common law of the State of California;

f.   Daiso's has engaged in unfair competition in violation of the common law of the State of California; and

g.   Daiso's infringing and dilutive acts and unfair competition has been egregious and willful.

B.     That the Court issue a permanent injunction restraining and enjoining Daiso and all of its agents, servants, officers, employees, successors, and assigns, and all other persons or entities in active concert or participation with Daiso from:

a.   Selling, offering for sale, marketing, advertising, promoting, importing, manufacturing, distributing, or purchasing the Accused Products or colorable imitations thereof;

b.   Using any of Crocs's Trademarks and/or any other confusingly similar designation, alone or in combination with other words, phrases, symbols, or designs, as trademarks, trade names, domain name components or otherwise, to market, advertise, promote, or identify any of Daiso's goods or services;

c.   Otherwise infringing or diluting the Crocs 3D Marks;

d.   Representing or taking any other action likely to cause confusion, mistake, or deception on the part of consumers as to the source or origin of defendants' products or services or as to any authorization, sponsorship, approval, or affiliation relationship between Daiso and Crocs;

e.   Unfairly competing with Crocs in any manner whatsoever or otherwise injuring its business reputation in the manner complained of herein; and

f.   Engaging in assignments or transfers, formation of new entities or associations or utilization of any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in the above subparagraphs.

C. That the Court enter an order pursuant to 15 U.S.C. §§ 1116, 1118 requiring Daiso, its agents, servants, officers, employees, successors, and assigns, to destroy all Accused Products or colorable imitations thereof that are in Daiso's possession, custody, or control.

D. That the Court enter an order pursuant § 1116(a), directing Daiso to file with the Court and serve on Crocs within 30 days after entry and service of the injunction, a verified report, in writing and under oath, setting forth in detail the manner and form in which Daiso has complied with Paragraphs B and C, *supra*.

E. That the Court enter an order pursuant to 15 U.S.C. § 1117 awarding all profits received by Daiso from the sales and its revenues of any kind earned as a result of sales of the Accused Products and colorable imitations thereof, and damages, to be determined, that Crocs has suffered as a result of Daiso's sales and marketing of the Accused Products and colorable imitations thereof; and that such damages be awarded in an amount sufficient to deter future acts of willful infringement and dilution by Daiso.

F. That the Court enter an order enjoining Daiso from engaging in unlawful, unfair, fraudulent, and/or deceptive acts or business practices by its unauthorized uses of the Crocs 3D Marks in commerce in violation of California Unfair Competition Laws, Cal. Bus. & Prof. Code §§ 17200, *et seq.*

G. That the Court enter an order awarding damages and costs to the fullest extent provided for by California common law, including punitive damages.

H. That the Court enter an order awarding Crocs's attorneys' fees and costs.

I. That the Court enter an order awarding Crocs pre-judgment and post-judgment interest.

J. That the Court enter such other relief as it deems proper and just.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal rules of Civil Procedure, Plaintiff demands a jury trial for

all causes of action, claims, or other issues in this action that are triable as a matter of right to a jury.

DATED:  June 15, 2022                Respectfully submitted,

**ARNOLD & PORTER KAYE SCHOLER LLP**

By:/s/  Michael A. Berta
     Michael A. Berta (No. 194650)

ARNOLD & PORTER KAYE SCHOLER LLP
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111
Telephone:  415.471.3100
Facsimile:  415.471.3400
Michael.Berta@arnoldporter.com

*Counsel for Plaintiff*
*Crocs, Inc.*